# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

THEODIS REED                                                                                           PLAINTIFF

v.                                            NO. 2:06CV00191JLH

MICHAEL J. ASTRUE, Commissioner,[1]
SOCIAL SECURITY ADMINISTRATION                                                         DEFENDANT

## OPINION

Theodis Reed brings this action under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II and for Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. §§ 416(i), 423, 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

## I.

Reed filed his applications for benefits in August 2003. In both applications, Reed alleged disability beginning December 23, 2002, due to HIV infection, asthma, hepatitis C, and reduced vision. (Tr. 60-62, 125, 336-337). His claims were denied initially and upon reconsideration. Pursuant to Reed's request, a hearing was conducted by the Administrative Law Judge on March 8, 2006, at which Reed, his attorney and a vocational expert testified. (Tr. 371-396). On May 11, 2006, the ALJ issued a decision denying Reed's claim for benefits. (Tr. 10-19). The Appeals Council denied Reed's request for review, making it the final decision of the Commissioner. (Tr. 5-7). Reed seeks judicial review of that decision.

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security Administration on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Rule 25(d)(1) of the Federal Rules of Civil Procedure.

**II.**

Reed was born on May 22, 1955, and was 50 years old at the time of the hearing on March 8, 2006. (Tr. 54). He has a tenth grade education. He was in special education. (Tr. 80, 151).[2]

Reed was first found to be HIV positive in March 2002. (Tr. 183). About the same time, he was found to have Hepatitis C. (Tr. 170). Reed has been receiving treatment at East Arkansas Family Health Clinic. According to the medical records from the Clinic from April 2002 until January 4, 2006, Reed has been treated for HIV, hypertension, hepatitis C, diabetes, gastroesophageal reflux disease, depression, and dermatitis. He was also treated for moderate obstructive pulmonary disease in May and June of 2002. (Tr. 161, 164, 165).

Reed worked in construction related jobs for 15 years, including drywall, painting, and concrete work. (Tr. 376). He last worked in construction in 1999, when he was laid off. (Tr. 377). After the lay-off, he worked for a few years mowing grass and doing tree service work. He also worked at a gym in 2002. His last day of work was in March 2002. (Tr. 377-378).

At the hearing, Reed complained of back pain and testified that he is only able to stand for about 5 minutes at a time. (Tr. 380 - 382). He stated that he can sit for about 25 to 30 minutes before having to change positions due to hip and leg pain. (Tr. 382). He is able to walk about 1/2 mile to 1 mile but cannot lift or carry anything. (Tr. 383). He has a driver's license and drives a car. (Tr. 376). Reed testified that he sometimes has shortness of breath. (Tr. 380-381). He stated that he has had asthma since he was 15 and that he uses an inhaler. (Tr. 386-387). He said that he suffers from night sweats and has blurred vision. (Tr. 381).

---

[2] According to applications and interview records, Reed stated he completed the 10th grade. At the hearing, Reed stated that he completed the 9th grade. (Tr. 375).

### III.

The ALJ undertook the familiar five-step analysis in determining whether Reed was disabled. The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520. *See Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

While the ALJ noted that Reed had reported wages in 2002, 2003, 2004, and 2005, he found that they did not constitute gainful activity within the meaning of the Social Security Act. Thus, the ALJ found that Reed has not engaged in substantial gainful activity since the alleged onset date. (Tr. 14).

The ALJ found that Reed has the following impairments, the combination of which is considered severe: non-symptomatic HIV infection, mild restrictive lung disease, and hepatitis C. The ALJ found Reed's diabetes to be controlled by diet and his gastroesophageal reflux disease and hypertension to be controlled by medication. The ALJ further found that any depression Reed experienced was episodic and situational in nature and did not limit his ability to perform work-related activities. (Tr. 14-15).

The ALJ found that Reed does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 15).

The ALJ evaluated Reed's subjective allegations and complaints pursuant to the criteria set forth

in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id*. at 1322. The ALJ found Reed's subjective allegations not to be borne out by the overall record or not to be fully credible. The ALJ found that Reed has the residual functional capacity to perform light work activity that allows him to sit or stand at will and that does not require perfect vision. (Tr. 15-17). He further found that Reed is unable to perform his past relevant work . (Tr. 17). Relying on the testimony of the vocational expert, the ALJ concluded that, considering Reed's age, education, work experience, and residual functional capacity, Reed is capable of other work that exists in significant numbers in the national economy. Therefore, the ALJ found that Reed is not disabled. (Tr.18-19).

### IV.

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

*Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

## V.

**A.     Duty to Develop Record**

Reed first contends that the ALJ erred by failing to develop the record about Reed's depression and reduced intellectual functioning. Reed argues that the ALJ erred in concluding that Reed's depression was not a "severe" impairment, but that it was "episodic" and "situational."

Although Reed did not allege depression as a basis for disability, the ALJ acknowledged that the medical records noted that Reed had reported being depressed. According to UAMS[3] records from August 2002, Reed was diagnosed with depression secondary to his HIV diagnosis. (Tr. 219). An entry in a UAMS Medical Center record pertaining to Reed's liver biopsy in February 2003 indicated that Reed had a history of depression. (Tr. 214).

Records from the Arkansas Family Health Clinic also noted that Reed was depressed on occasion. On November 19, 2003, he reported that he had been "somewhat depressed some, but realizes that he is doing better." (Tr. 246). On March 5, 2004, Reed reported being somewhat depressed. His girlfriend had just left him, and he was upset that she told everyone in the small town where he lives that he is HIV positive. Dr. Ward-Jones, Reed's treating physician, diagnosed Reed with "Some Depression" and stated that she would try to get Reed some samples of Zoloft. (Tr. 242).

No further reference was made in any of the medical records to Reed's depression. There is no evidence in the record that Reed even picked up the samples of Zoloft or sought treatment for depression. On November 16, 2004, Dr. Ward-Jones noted that Reed "[h]as not been depressed" and that he "has been working some." (Tr. 319). According to a January 2006 record from East Arkansas Family Health Clinic, Reed is doing well and is in "good spirits." (Tr. 343).

---

[3] University of Arkansas for Medical Sciences.

Reed is not on medication for depression, and he did not testify at the hearing that he suffers from depression.

There is no doubt that the ALJ has the duty to develop the record fully. *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). However, a consultative examination is not required where there is sufficient evidence in the record for the ALJ to make an informed decision. *Id*. Here, the evidence fully supported the ALJ's conclusion that Reed's depression is not severe.

Reed also complains that the ALJ erred by failing to obtain intelligence testing to assess Reed's borderline intellectual functioning or learning disabilities. Reed never alleged any intellectual limitations in his application or at the hearing. At the most, Reed stated that he attended some special education classes, and that he has marginal reading and math skills. (Tr. 375),

Reed was capable of working for many years despite his alleged reduced intellectual capacity. *See Roberts*, 222 F.3d at 469 (plaintiff successfully held employment for many years with cognitive abilities he currently possessed). The ALJ did not have an obligation to order intelligence testing or further develop the record regarding Reed's intellectual ability.

**B.     Credibility Assessment**

Second, Reed alleges that the ALJ erred in failing to assess the credibility factors of *Polaski v. Heckler* and in failing to set forth specific reasons why he did not find Reed to be entirely credible. Reed's assertion is without merit.

The ALJ spent two full pages discussing Reed's subjective complaints. He noted that the record did not support Reed's allegations regarding his limited ability to sit or stand due to pain. He found that statements that Reed had made to his treating physician and the advanced practice nurse regarding work that he performed subsequent to filing for disability benefits contradicted his testimony that he had not

6

worked since March 2002 and that he is unable to work. For example, on June 3, 2003, Reed reported that he was cutting grass and painting as a form of employment. (Tr. 258). On June 30, 2004, he reported that he was doing a "little side work painting." (Tr. 238). On November 16, 2004, he reported that he was "working some." (Tr. 319).

Reed's physician did not place any restrictions on his activities and encouraged him to exercise. (Tr. 308). Reed testified that he could walk "maybe about a half a mile or a mile." (Tr. 383).

The ALJ also found that Reed consistently reported to his physician or advanced practice nurse that he had no complaints and denied shortness of breath, dizziness, blurry vision or other problems. (Tr. 303, 307, 309). Reed's hypertension, gastroesophageal reflux disease, and diabetes are all very well controlled. His HIV infection is asymptomatic.

Substantial evidence supports the ALJ's conclusion that Reed's subjective complaints were not entirely credible.

### C.    Determination of Residual Functional Capacity

The ALJ found that Reed has the residual functional capacity to perform light work activity that allows him to sit or stand at will and does not require perfect vision. Light work is defined as lifting 20 pounds occasionally and 10 pounds frequently, and sitting or standing for 6 hours in an 8-hour work day. (Tr. 15). Reed asserts the ALJ did not properly determine his residual functional capacity. In particular, he states that the ALJ failed to address Reed's ability perform sustained work activity, that is work on a "regular and continuing basis" for eight hours daily, five days a week. The ALJ's decision reflects that he did, in fact, consider that very issue. He stated:

> The evidence shows no medically determinable impairment that could cause marked limitations in [Reed's] ability to perform basic work-related activities. He has certainly reported work activity to his caregivers that exceeds the activity level set forth in the

above residual functional capacity. Nevertheless, giving every benefit of the doubt to the claimant, in light of the number of medications he requires and the fact that there is certainly an amount of stress that accompanies his diagnoses, the undersigned would be wary of expecting the clamant to reasonably have the ability to perform more than light work on a sustained basis. (Tr. 17).

Reed also complains that the ALJ did not consider all his impairments, including those that the ALJ found not to be severe. Reed, however, cannot point to anything in the ALJ's thorough decision to support this assertion. The ALJ 's decision reflects that he reviewed and considered all the evidence in the record.

Reed additionally contends that the residual functional capacity is not supported by a treating physician's assessment of Reed's ability. Again, this assertion is without merit. The record contains regular reports from Dr. Ward-Jones, Reed's treating physician. She consistently stated that Reed was doing well and did not impose any significant restrictions on Reed. Reed has not provided any medical evidence that would call into question the conclusions of the ALJ.

### D.    Reliance on Vocational Expert at Step Five

Finally, Reed contends that the ALJ erred at Step 5 because the hypothetical to the vocational expert did not accurately reflect Reed's limitations. Reed states that the ALJ should have considered reduced reading, writing, and math abilities, as well as fatigue and the need for additional rest breaks, in the hypothetical. Reed asserts that the vocational expert's conclusion of Reed's ability to work as a domestic laborer and cleaner was based on a hypothetical which omitted the above significant limitations.

Reed does not provide any support for his alleged limitations of fatigue or the need for extra rest breaks. Although he claims limited reading and math abilities, he has not presented any evidence that the alleged limitations would preclude work activity as a laborer or cleaner. As discussed above, his

alleged limitations did not preclude him from his previous work in construction or carpentry. (Tr. 82).

The ALJ posed the following hypothetical to the vocational expert:

> Assume you're dealing with an individual who is the same age as Claimant with the same educational background and past work experience. Further assume that the individual retains the residual functional capacity for light work with the following additional limitations. This hypothetical individual would need to be in a work setting where he could alternately sit and stand and would need to be in a work setting where perfect vision would not be required. (Tr. 393).

The vocational expert determined that jobs exist in the national economy which would fall within the parameters of the hypothetical, such as laborer or cleaner. (Tr. 303). The hypothetical posed to the vocational expert was proper as it included all the impairments that were supported by substantial evidence in the record as a whole. *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004). Because the vocational expert was presented with a proper hypothetical, his testimony that there were significant numbers of jobs in the national economy that Reed "could perform despite his limitations constitutes substantial evidence supporting the ALJ's determination that" Reed was not disabled. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

## CONCLUSION

In sum, the Court finds that there is substantial evidence to support the Commissioner's decision that Reed was not disabled.

Accordingly, the Commissioner's administrative decision is hereby AFFIRMED.

IT IS SO ORDERED this 26th day of July, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE